## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Maria Ortiz, And as Mother and Next Friend of Eliana Hernandez, and Tony Hernandez, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.  08 cv 5251 |
| Chicago Police Officers Ramon Silva, Debra Anderson, Aaron Cunningham, Larry Hicks, Manuel Perez, Joshua Purkiss, Chad Bauman, David Greenwood, Richard Denton, Richard Alvarez, Superintendent Jodi Weis Unknown Chicago Police Officers, and the City of Chicago, a municipal corporation, | ) ) ) ) ) ) ) ) ) | Judge Guzman

Magistrate Judge Schenkier |
| Defendants. | ) | |

## THIRD AMENDED COMPLAINT

NOW COME the plaintiffs Maria Ortiz, as Mother and Next Friend of Eliana Hernandez, a minor, and Tony Hernandez ("plaintiffs"), by and through their attorneys, Steven H. Fine, and Breen Pugh & Associates, complaining of the defendants Officers Ramon Silva, Debra Anderson, Aaron Cunningham,Larry Hicks, Manuel Perez, Joshua Purkiss, Chad Bauman, David Greenwood, Derrick Denton, Richard Alvarez, Superintendent Jodi Weis and Unknown Chicago Police Officers and the City of Chicago, a municipal corporation, as follows:

## JURISDICTION AND VENUE

1.     Jurisdiction is invoked pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States, Title 42, U.S.C. §§1983 and 2000e. Supplemental jurisdiction arises pursuant to 28 U.S.C. §§1331 and 1343(a).

2.      Venue is proper, pursuant to 28 U.S.C. §1391 in as much as the defendants reside or are located in the Northern District of Illinois and the plaintiffs reside in the Northern District of Illinois, and all of the acts and damages complained of herein occurred in the Northern District of Illinois.

<u>PARTIES</u>

3.   Plaintiff Maria Ortiz is the Mother of Eliana Hernandez, a minor. Maria Ortiz and Tony Hernandez are additional plaintiffs.  The plaintiffs are citizens of the United States and residents of the State of Illinois.

4.      Defendants Ramon Silva, Debra Anderson, Aaron Cunningham, Joshua Purkiss, Chad Bauman, David Greenwood, Derrick Denton, Richard Alvarez, Larry Hicks, Manuel Perez, and other Unknown Chicago Police Officers ("Officers") were, at all relevant times, employed by the City of Chicago as sworn police officers. All of the officer defendants are sued in their individual capacities.  Superintendent Jodi Weis is the current Superintendent of the Chicago Police Department.

5.      Defendant CITY OF CHICAGO is a municipal corporation of the State of Illinois and is and was, at all relevant times, the employer of the officer defendants. The City of Chicago maintains, manages and/or operates the Chicago Police Department.

<u>FACTS COMMON TO ALL COUNTS</u>

6.      On September 21, 2007, all of the plaintiffs resided at 4328 South Spaulding, 1st floor, Chicago, Illinois, a multi-unit apartment building.  Each unit of the building has a separate entrance, mailbox, and security door buzzer.  Furthermore, the utilities are divided so that each unit occupant pays his/her own expenses.

7.     On September 21, 2007, without warning or consent, Officers Silva, Debra Anderson, Aaron Cunningham, Larry Hicks, Manuel Perez, Joshua Purkiss, Chad Bauman, David Greenwood, Derrick Denton, Richard Alvarez and other Unknown Chicago Police Officers forced entry to the plaintiffs' residence.  At the time of forced entry, the plaintiffs' infant daughter was sleeping in her bedroom and Maria Ortiz was in the process of returning to the apartment from the basement.  At the time of the forced entry, Tony Hernandez was not at the residence.

8.     As plaintiff Ortiz saw the officers forcing their way into her apartment she warned one of the officers that her young daughter was asleep in the apartment.  But before Ms. Ortiz could stop the officers, an unknown female officer pinned Ms. Ortiz against a wall, yelled at her to be quiet and pointed a gun at Ms. Ortiz' head.  At no time was Ms. Ortiz a threat to any officers' safety.

9.     The unknown female officer detained Ms. Ortiz against her will, without probable cause, or lawful justification.

10.     While inside plaintiffs' residence, unknown Chicago Police Officers discharged canisters of pepper spray into the small apartment; the pepper spray spread into the infant's nursery.

11.     Shortly after the unknown officers recklessly and without cause, discharged the pepper spray, Ms. Ortiz was allowed to enter the apartment and remove her injured infant.

12.     Although Ortiz requested medical attention for her daughter, unknown officers denied her request.  After refusing to provide medical treatment for the infant, the officers forced Ortiz to sit outside the apartment while they searched the residence. While

Ortiz was unlawfully detained, unknown officers threatened to place her daughter in the custody of the Department of Children and Family Services. The officers made the threat knowing that Ortiz did not commit any crimes and that the child was not living in an injurious environment.

13.     During the search of the apartment, officers took car keys from the apartment and searched the street for any car belonging to Ortiz and Hernandez. The officers used the remote alarm attached to the keys to locate the plaintiff's cars. After the officers located Ortiz's Hyundai Sonata, the officers unlawfully unlocked and opened the door, entered the vehicle and conducted a warrantless search. The officer's also located and conducted an unlawful search of Hernandez's Chevy Tahoe.

14.     During the search of the residence, officers seized a gold ring and other jewelry belonging to plaintiff Tony Hernandez. The property was inherited from Tony's deceased father. The officers also seized over eight thousand dollars ($8,000.00) from the residence. The money was part of the family's savings and profit from the sale of a family car.

15.     After an unknown male officer seized the money, he placed the money in his pocket. As the male officer placed the money in his pocket, a female officer looked in his direction and acknowledged the unknown male officer. The unknown male officer did not issue an inventory slip, evidence recovery log or notice of inventory return policy to the plaintiffs, recover contraband from the residence or place Ortiz under arrest. The seizure of the property was without probable cause or a valid warrant.

16.     During the search of the residence, unknown officers defaced, cut or ruined certain items belonging to the plaintiffs.

17.     On December 3, 2007, the plaintiffs' attorneys, Breen Pugh & Associates, sent a letter to a supervisor of the Cook County State's Attorney's Office requesting the return of the plaintiffs' personal property and the missing money.  A copy of the letter was sent to Dana Starks, Interim Superintendent Chicago Police Department.  The State's Attorney's Office and the police department failed to investigate the complaint.  On information and belief, the police department failed to notify OPS of the allegations against the officers.  On April 16 2009, the plaintiffs sent another written demand to the City requesting the return of their property.  As of today's filing, the City continues to wrongfully withhold the plaintiffs' property.

18.     The plaintiffs' property was seized by the defendant officers and the City without probable cause or lawful justification. Although the police reports generated after the seizure establish that the defendants recovered the money and jewelry from plaintiffs' residence, the officers knowingly inventoried the property under a third party's name.  As a result, on information and belief, the City claims that it cannot return plaintiffs' property because of the City's policies regarding return of inventoried property. The City now claims that because the defendant officers inventoried the property under the wrong name, the City cannot determine the property's rightful owner, so the City will not return the property, regardless of the unequivocal police reports.

19.     On or about December 19, 2007, the plaintiffs filed a formal complaint against the officers. Although the plaintiffs provided formal statements to an investigator, the investigation remains open. Additionally, the investigator failed to properly investigate the allegations against the unknown officers. Specifically, the investigator did not allow the plaintiffs the opportunity to view a photo-array or physical line-up of the

unknown officers.  On information and belief, the investigator has not interviewed the accused officers.

**COUNT I – 42 U.S.C. §1983**

**EXCESSIVE FORCE**
***MONELL* CLAIM**

20.     Plaintiffs reallege each of the foregoing paragraphs as if fully stated herein.

21.     As described in the preceding paragraphs, the use of force, acting under color of law and within the scope of their employment, constituted excessive force in violation of the plaintiffs' Constitutional rights.

22.     At the time that the officers used excessive force, there was not any threat of death or serious bodily harm to anyone but the plaintiffs.

23.     The officers' conduct was objectively unreasonable and was undertaken intentionally, with willful indifference to the plaintiffs' constitutional rights. The officers, acting under color of law and within the scope of their employment, committed the acts such that their employer, City of Chicago, is liable for their actions.

24.     The officers' conduct constituted the use of excessive force without cause or justification in violation of the plaintiffs' Fourth Amendment rights as incorporated by the Fourteenth Amendment and/or their equal protection rights guaranteed by the Fourteenth Amendment.

25.     The officers' conduct was undertaken pursuant to the policy and practice of the City of Chicago and the Chicago Police Department in that:

> a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force

behind, the very type of conduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b. As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe that their use of force will rarely be adequately scrutinized and, in that way, directly encouraging future abusive uses of force such as those affecting plaintiff;

c. Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse citizens in a manner similar to that alleged by the plaintiffs in this Count, yet the Chicago Police Department makes findings of wrongdoing only in a disproportionately small number of cases;

d. City policymakers were deliberately indifferent to the series of bad acts by Chicago Police officers from which it can be inferred that the City policymakers were bound to have noticed what was going on and yet they failed to act, thereby encouraging or at least condoning (in either event, adopting) the misconduct of its officers;

e. During the relevant time, the Chicago Police Department had one or more of the following customs or policies: 1) stopping, detaining, arresting and searching civilians without a warrant, probable cause,

reasonable suspicion, consent, or other legal basis; 2) searching civilians' homes and property without a warrant, probable cause, reasonable suspicion, consent, or any other legal basis; 3) arbitrary use and excessive force against arrestees, detainees and other civilians; 4) a code of silence in which police officers fail to report police misconduct including the type of misconduct alleged by plaintiffs in this Complaint; 5) a code of silence in which police officers either remain silent or give false and misleading information during official investigations to cover up misconduct and protect themselves and other police officers; 6) failure to adequately investigate citizen complaints against police officers for the type of misconduct alleged by plaintiff in this Complaint; 7) failure to adequately discipline police officers for the type of misconduct alleged by the plaintiffs in this Complaint such that the City of Chicago acquiesced in a longstanding practice or custom of failing to discipline officers engaged in illegal conduct from which the unconstitutional code of silence can be inferred; 8) conducting inherently deficient investigations of complaints of police misconduct in which an officer receives meaningful discipline in only a miniscule percentage of cases, thereby encouraging more police misconduct; 9) failure to deter police officers from the type of misconduct alleged in this Complaint, by its lack of discipline for police misconduct and defective internal investigations; 10) a custom of failing to train police officers to not retaliate against

officers who violate the code of silence; 11) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 12) a custom of failing to properly supervise officers engaged in wrongful conduct; 13) failure to adequately train and supervise police officers to rectify the malfeasance described in sub-paragraphs described above;

f. Despite general orders prohibiting police officer misconduct, the former Superintendent of the Chicago Police Department has testified, under oath, that CPD's general orders are merely guidelines;

g. The City of Chicago has negotiated a contract with the police union in which the City has agreed not to check discipline histories while conducting internal affairs investigations of officers suspected of misconduct;

h. The City of Chicago and the relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, thereby tacitly approving and ratifying the type of misconduct alleged here;

26. The officers' actions, as alleged in this Complaint, were done pursuant to, and as a result of, one or more of the above *de facto* practices, policies and customs of the City of Chicago.

27. The practices, policies and customs described above are widespread, permanent and well-settled and were known, or should have been known, to the municipal policy-makers of the City of Chicago.

28.     As a direct and proximate result of the City of Chicago and the officers intentionally, knowingly, unlawfully and unconscionably acting in the manner aforesaid, the plaintiffs have and will suffer pain, humiliation and severe emotional distress and have been deprived of certain rights and privileges as citizens of the United States.

WHEREFORE, the plaintiffs pray that the Court enter judgment in their favor and against defendants City of Chicago, Officer Silva, Debra Anderson, Aaron Cunningham, Larry Hicks, Manuel Perez, Joshua Purkiss, Chad Bauman, David Greenwood, Derrick Denton, Richard Alvarez and unknown officers, awarding compensatory damages and attorneys' fees, along with punitive damages against Officer Silva, Debra Anderson, Aaron Cunningham,  Larry Hicks, Manuel Perez, Joshua Purkiss, Chad Bauman, David Greenwood, Derrick Denton, Richard Alvarez and other unknown officers, and any other relief this Court deems appropriate.

## COUNT II-42 USC 1983

### FALSE ARREST/UNLAWFUL DETENTION/DUE PROCESS
### MONELL CLAIM

29.     Plaintiff Ortiz realleges each of the foregoing paragraphs as if fully stated herein.

30.     As described above, the officers falsely arrested Ortiz.

31.     As more fully described above, the officers detained Ortiz without lawful justification.  Prior to the unlawful detention, Ortiz was not committing a crime or breaking any laws.  Ortiz was pinned against a wall, detained at gunpoint and forced to sit outside of her residence while the police conducted a search of her property.

32.     As described in the preceding paragraphs, the officers' conduct, acting under color of law and within the scope of their employment, constituted a violation of the plaintiff's Constitutional rights.

33.     The actions of the officers were undertaken with malice, willfulness and reckless indifference to the rights of others.

34.     By reason of the officers' misconduct, the plaintiff was deprived of rights, privileges and immunities secured to her by the Constitution of the United States and laws enacted thereunder.

35.     The conduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago and the Chicago Police Department in that:

      a.  As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of conduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

      b.  As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe that their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting plaintiff;

      c.  Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse

citizens in a manner similar to that alleged by plaintiff in this Count, yet the Chicago Police Department makes findings of wrongdoing only in a disproportionately small number of cases;

d.  City policymakers were deliberately indifferent to the series of bad acts by Chicago Police officers from which it can be inferred that the City policymakers were bound to have noticed what was going on and yet they failed to act, thereby encouraging or at least condoning  (in either event, adopting) the misconduct of the officers;

e.  During the relevant time, the Chicago Police Department had one or more of the following: 1) a custom of chastising officers who violate the code of silence; or 2) a custom of failing to train police officers to not retaliate against officers who violate the code of silence; 3) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 4) a custom of failing to properly supervise officers engaged in wrongful conduct;

f.  Despite general orders prohibiting police officer misconduct, the former Superintendent of the Chicago Police Department has testified, under oath, that CPD's general orders are merely guidelines;

g.  The City of Chicago has negotiated a contract with the police union in which the City has agreed not to check discipline histories while conducting internal affairs investigations of officers suspected of misconduct;

h. City policymakers are aware of (and condone and facilitate by their inaction) a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case;

i. The City of Chicago and the relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, thereby tacitly approving and ratifying the type of misconduct alleged here;

j. The City of Chicago acquiesced in a longstanding practice or custom of failing to discipline officers engaged in illegal conduct from which the unconstitutional code of silence can be inferred;

k. The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to concealing and/or suppressing officer misconduct, including the code of silence. The concealment and suppression of the existence of misconduct includes, but is not limited to: failure to sufficiently investigate allegations of misconduct, failure to accept complaints from citizens against police officers; failure to promptly record witness statements or preserve evidence, failure to promptly interview suspect officers, failure to properly and sufficiently discipline officers, failure to initiate prompt disciplinary procedures related to alleged misconduct; and,

l. The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to acts of illegality committed by

officers against civilians that encouraged the defendants to believe that they could deprive plaintiff of his Constitutional rights with impunity and with the explicit or tacit approval of the City of Chicago.

36.    The officers' actions, as alleged in this Complaint, were done pursuant to and as a result of, one or more of the above *de facto* practices, policies and customs of the City of Chicago.

37.    The practices, policies and customs described above, are widespread, permanent and well-settled and were known, or should have been known, to the municipal policy-makers of the City of Chicago.

38.    As a direct and proximate result of the City of Chicago and the defendant officers intentionally, knowingly, unlawfully and unconscionably acting in the manner aforesaid, the plaintiff has and will suffer damage to her reputation, pain, suffering, humiliation and severe emotional distress and has been deprived of certain rights and privileges as a citizen of the United States, all in violation of 42 U.S.C. §1983.

WHEREFORE, the plaintiff prays that the Court enter judgment in her favor and against defendants City of Chicago, Officer Silva, Debra Anderson, Aaron Cunningham, Larry Hicks, Manuel Perez, Joshua Purkiss, Chad Bauman, David Greenwood, Derrick Denton, Richard Alvarez and Unknown Officers awarding compensatory damages and attorneys' fees, along with punitive damages against the individual officers, and any other relief this Court deems appropriate.

## COUNT III – 42 U.S.C. §1983

### UNLAWFUL SEARCH AND SEIZURE
### MONELL CLAIM

39.     Plaintiffs Ortiz and Hernandez reallege each of the foregoing paragraphs as if fully stated herein.

40.     As described above, Officer Silva, Debra Anderson, Aaron Cunningham, Larry Hicks, Manuel Perez, Joshua Purkiss, Chad Bauman, David Greenwood, Derrick Denton, Richard Alvarez and Unknown Chicago Police Officers, acting under color of law, conducted several unconstitutional searches and seizures of plaintiffs' home, body and cars.

41.     As described in the preceding paragraphs, the officers' conduct, acting under color of law and within the scope of their employment, constituted excessive force in violation of the plaintiffs' Constitutional rights.

42.     More specifically, the officers had neither warrants nor consent to search car belonging to Ortiz and Tony Hernandez, yet conducted an extended and unreasonable search of the car without lawful justification.  Furthermore, neither the extended stay within the home nor actions of the officers within the home was lawfully justified by the circumstances confronting the officers.

43.     Additionally, the seizure of the property belonging to Ortiz and Tony Hernandez was unlawful. The officers seized the property without probable cause or reasonable justification to believe that the property was the product of illegal activity. The officers did not recover contraband from plaintiffs' home, body or cars.  Moreover, the police did not arrest plaintiffs.

44. The officers' conduct violated the plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution.

45. The misconduct was undertaken with malice, willfulness, and reckless disregard and indifference to the rights of plaintiff.

46. The misconduct was caused and participated in by the unknown officers' supervisors in that they failed to adequately train and supervise the unknown officers.

47. The conduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

   a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of conduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

   b. As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe that their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting plaintiff;

   c. Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse citizens in a manner similar to that alleged by plaintiff in this Count,

yet the Chicago Police Department makes findings of wrongdoing only in a disproportionately small number of cases;

d. City policymakers were deliberately indifferent to the series of bad acts by Chicago Police officers from which it can be inferred that the City policymakers were bound to have noticed what was going on and yet they failed to act, thereby encouraging or at least condoning (in either event, adopting) the misconduct of the officers;

e. During the relevant time, the Chicago Police Department had one or more of the following: 1) a custom of chastising officers who violate the code of silence; or 2) a custom of failing to train police officers to not retaliate against officers who violate the code of silence; 3) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 4) a custom of failing to properly supervise officers engaged in wrongful conduct;

f. Despite general orders prohibiting police officer misconduct, the former Superintendent of the Chicago Police Department has testified, under oath, that CPD's general orders are merely guidelines;

g. The City of Chicago has negotiated a contract with the police union in which the City has agreed not to check discipline histories while conducting internal affairs investigations of officers suspected of misconduct;

h. City policymakers are aware of (and condone and facilitate by their inaction) a "code of silence" in the Chicago Police Department, by

which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case;

i.  The City of Chicago and the relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, thereby tacitly approving and ratifying the type of misconduct alleged here;

j.  The City of Chicago acquiesced in a longstanding practice or custom of failing to discipline officers engaged in illegal conduct from which the unconstitutional code of silence can be inferred;

k.  The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to concealing and/or suppressing officer misconduct, including the code of silence.  The concealment and suppression of the existence of misconduct includes, but is not limited to:  failure to sufficiently investigate allegations of misconduct, failure to accept complaints from citizens against police officers; failure to promptly record witness statements or preserve evidence, failure to promptly interview suspect officers, failure to properly and sufficiently discipline officers, failure to initiate prompt disciplinary procedures related to alleged misconduct; and,

l.  The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to acts of illegality committed by officers against civilians that encouraged Officer Silva, Debra Anderson, Aaron Cunningham,  Larry Hicks, Manuel Perez and the

Unknown Chicago Police Officers to believe that they could deprive plaintiffs of their Constitutional rights with impunity and with the explicit or tacit approval of the City of Chicago.

48.     The practices, policies and customs described above, are widespread, permanent and well-settled and were known, or should have been known, to the municipal policy-makers of the City of Chicago.

49.      As a direct and proximate result of the City of Chicago, Officer Silva, Debra Anderson, Aaron Cunningham, Larry Hicks, Manuel Perez, Joshua Purkiss, Chad Bauman, David Greenwood, Derrick Denton, Richard Alvarez and the unknown Chicago Police Officers intentional, knowingly, unlawfully and unconscionably acting in the manner aforesaid, the plaintiffs have and will suffer damage to their reputation, pain suffering, and humiliation and severe emotional distress and have been deprived of certain rights and privileges as a citizen of the United States.

**WHEREFORE**,  the plaintiffs pray that the Court enter judgment in their favor and against City of Chicago, Officer Silva, Debra Anderson, Aaron Cunningham,  Larry Hicks, Manuel Perez, Joshua Purkiss, Chad Bauman, David Greenwood, Derrick Denton, Richard Alvarez and the Unknown Chicago Police Officers, awarding compensatory damages and attorneys' fees, along with punitive damages against the individual officers, and any other relief this Court deem appropriate.

## COUNT IV- 42 U.S.C 1983

### FAILURE TO INTERVENE
### MONELL CLAIM

50.     Plaintiffs reallege each of the foregoing paragraphs as if fully stated herein.

51. The non-intervening officers had a reasonable opportunity to prevent the harm, had they been so inclined, but failed to do so.

52. As described in the preceding paragraphs, the conduct of the non-intervening officers, acting under color of law and within the scope of their employment, violated the United States Constitution.

53. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to constitutional rights.

54. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

55. The misconduct described in this Count was undertaken under the policy and practice of the Chicago Police Department in the manner more fully described above.

56. The practices, policies and customs described above, are widespread, permanent and well-settled and were known, or should have been known, to the municipal policy-makers of the City of Chicago.

57. As a direct result of the defendant officers' failure to intervene to prevent the unjustified and excessive use of force, false arrest and unlawful search and seizure to which the plaintiffs' were subjected, the plaintiffs suffered pain and injury, as well as emotional distress and have been deprived of certain rights and privileges as citizens of the United States.

**WHEREFORE**, the plaintiffs pray that the Court enter judgment in their favor and against City of Chicago, Officer Silva, Debra Anderson, Aaron Cunningham, Larry Hicks, Manuel Perez, Joshua Purkiss, Chad Bauman, David Greenwood, Derrick Denton, Richard Alvarez and the Unknown Chicago Police Officers, awarding compensatory

damages and attorneys' fees, along with punitive damages against the individual officers, and any other relief this Court deem appropriate.

### COUNT V- 42 U.S.C. §1983

### DUE PROCESS VIOLATION
### MONELL CLAIM

58. Plaintiffs reallege each of the foregoing paragraphs as if fully stated herein.

59. The City of Chicago and defendant officers unlawfully seized the plaintiffs' property, under color of law, without legal justification or probable cause.

60. The defendant officers inventoried the plaintiffs' property in the name of a third party.

61. Although the plaintiffs made several attempts to recover their property, the City willfully refuses to return the items unlawfully seized from the plaintiffs.

62. The City's refusal to return the property is based on a policy that denies citizens the right to recovery their property after police misconduct. The City's policy rewards the officers' misconduct and unlawful seizure of the plaintiffs' property.

63. The defendants seized the plaintiffs' property but never notified the plaintiffs of the seizure, failed to provide the plaintiffs notice of a hearing to contest the seizure or their right to a hearing. The City refuses to provide a process sufficient to remedy the procedural deprivation suffered by the plaintiffs.

64. As described in the preceding paragraphs, the conduct of the officers, acting under color of law and within the scope of their employment, violated the United States Constitution.

65. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to constitutional rights.

66. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

67. The misconduct described in this Count was undertaken under the policy and practice of the Chicago Police Department in the manner more fully described above.

68. The practices, policies and customs described above, are widespread, permanent and well-settled and were known, or should have been known, to the municipal policy-makers of the City of Chicago.

69. As a direct result of the defendant officers' conduct, the plaintiffs suffered and continue to suffer a violation of their Constitutional Rights as guaranteed to them under the Fourth and Fourteenth amendments to the United States Constitution to be free from unreasonable searches and seizures, to be free from deprivation of life, liberty or property without due process of law, loss of their personal property and physical and emotional pain and suffering.

**WHEREFORE**, the plaintiffs pray that the Court enter judgment in their favor and against City of Chicago, Officer Silva, Debra Anderson, Aaron Cunningham, Larry Hicks, Manuel Perez, Joshua Purkiss, Chad Bauman, David Greenwood, Derrick Denton, Richard Alvarez, Superintendent Weis and the Unknown Chicago Police Officers, awarding compensatory damages and attorneys' fees, along with punitive damages against the individual officers, and any other relief this Court deem appropriate.

## COUNT VI – State Law Claim:

## ASSAULT AND BATTERY

69.     Plaintiff Eliana Hernandez realleges each of the foregoing paragraphs as if fully stated herein.

70.     As described in the preceding paragraphs, the defendant officers' conduct, acting within the scope of their employment as a police officer, constituted unjustified and offensive threats and physical contact, undertaken willfully and wantonly, proximately causing the plaintiff Eliana Hernandez bodily injury.

71.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to plaintiff's constitutional rights.

72.     The misconduct described in this Count was undertaken by the officers within the scope of their employment such that their employer, the City of Chicago, is liable for their actions.

73.     As a direct and proximate result of the unknown officers' acts, the plaintiff was injured, suffering bodily injuries and other damages.

WHEREFORE, plaintiff respectfully requests that this Court enter judgment in their favor and against Ramon Silva, Debra Anderson, Aaron Cunningham, Larry Hicks, Manuel Perez, Joshua Purkiss, Chad Bauman, David Greenwood, Derrick Denton, Richard Alvarez and the unknown officers, awarding compensatory damages, as well as punitive damages and any other relief this Court deems just and appropriate.

## COUNT VII – State Law Claim:
## TRESPASS

74.     Plaintiffs reallege each of the foregoing paragraphs as if fully stated herein.

75.     As described in the preceding paragraphs, the officer defendants did knowingly and intentionally intrude upon the plaintiffs' premises and property.

76.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to plaintiffs' constitutional rights.

77.     The misconduct described in this Count was undertaken by the officers within the scope of their employment such that his employer, the City of Chicago, is liable for their actions.

78.     As a result of the officer defendants' unjustified and unlawful trespass, the plaintiffs were injured, suffering emotional anxiety, mental trauma, humiliation, fear, stress, pain and suffering and other damages.

WHEREFORE, the plaintiffs respectfully requests that this Court enter judgment in their favor and against the officer defendants, awarding compensatory damages, as well as punitive damages and any other relief this Court deems just and appropriate.

## COUNT VIII -State Law Claim:

### THEFT

79.     Plaintiffs Ortiz and Hernandez reallege each of the foregoing paragraphs fully stated herein.

80.     The defendant officers seized the plaintiffs' money and jewelry without consent or legal justification.

81.     As described in the preceding paragraphs, the officer defendants did knowingly and without legal justification to take the plaintiffs' property. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to plaintiffs' constitutional rights.

82.     The misconduct described in this Count was undertaken by the officers within the scope of their employment such that his employer, the City of Chicago, is liable for their actions.

83.     As a direct and proximate result of the officers' acts, the plaintiffs were, suffered loss of property.

WHEREFORE, plaintiffs respectfully requests that this Court enter judgment in their favor and against the unknown officers, awarding compensatory damages, as well as punitive damages and any other relief this Court deems just and appropriate.

## COUNT IX

## INTENTIONAL INFLICITON OF EMOTIONAL DISTRESS

84.     Plaintiff Ortiz realleges each of the foregoing paragraphs as if fully stated herein.

85.     The acts and conduct of the defendant officers as set forth above were extreme and outrageous. The defendant officers intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to the plaintiff.

86.     Said actions and conduct did directly and proximately cause severe emotional distress to the plaintiff and thereby constituted intentional infliction of emotional distress.

87.     The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

88.     The misconduct described in this Count was undertaken by the officers within the scope of their employment such that his employer, the City of Chicago, is liable for their actions.

89.     As a proximate result of the officers' wrongful acts, the plaintiff suffered damages, including severe emotional distress and anguish.

WHEREFORE, the plaintiff prays for judgment against the defendants, jointly and severally, for compensatory damages and punitive damages plus costs.

## COUNT X- CONVERSION

90.     Plaintiff Ortiz realleges each of the foregoing paragraphs as if fully stated herein.

91.     Although the defendant officers and the City are continuing to exercise unauthorized and wrongful assumption of control, dominion or control or ownership over the plaintiffs' property.

92.     The plaintiffs are the rightful owners of the property.

93.     The plaintiffs have a legal right to the immediate possession of the property.

94.     The plaintiffs have made demands for possession and the return of the property.

95.     As described in the preceding paragraphs, the officer defendants did knowingly and without legal justification take the plaintiffs' property. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to plaintiffs' constitutional rights.

96.     The misconduct described in this Count was undertaken by the officers within the scope of their employment such that his employer, the City of Chicago, is liable for their actions.

97.     As a direct and proximate result of the officers' acts, the plaintiffs were, suffered loss of property.

WHEREFORE, plaintiffs respectfully requests that this Court enter judgment in their favor and against the unknown officers, awarding compensatory damages, as well as punitive damages and any other relief this Court deems just and appropriate.

## COUNT XI –*RESPONDEAT SUPERIOR*

98.     Plaintiffs reallege each of the foregoing paragraphs as if fully stated herein.

99.     In committing the acts alleged in the preceding paragraphs, the officer defendants were members of, and agents of, the Chicago Police Department, acting at all relevant times, within the scope of their employment.

100.     Defendant City of Chicago is liable as principal for all torts committed by its agents.

WHEREFORE, plaintiffs respectfully requests that the Court enter judgment in his favor and against defendant City of Chicago, in an amount equal to any award against the officer defendants and the Unknown Chicago Police Officers, and any other relief this Court deems just and appropriate.

## COUNT XII – INDEMNIFICATION

101.    Plaintiffs realleges each of the foregoing paragraphs as if fully stated herein.

102.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

103.    The officer defendants and the Unknown Chicago Police Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, plaintiffs respectfully requests that this Court enter judgment in their favor and against defendant City of Chicago in the amounts awarded to plaintiffs against the officer defendants and Unknown Chicago Police Officers, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.


Date:   5/20/09                                             Respectfully submitted,



                                                  By: /s/ Steven H Fine
                                                  One of their Attorneys

Breen Pugh & Associates              Steven H. Fine
Todd S. Pugh                         53 W. Jackson Blvd, Suite 1515
53 W Jackson, Suite 1460             Chicago, IL 60604
Chicago, Il 60604                    (312) 922-0855
(312) 360-1001